POPE *v.* CITY OF NASHVILLE.

Opinion delivered December 3, 1917.

1. LOCAL IMPROVEMENT—SIGNATURE OF MAJORITY—DETERMINATION—PUBLICATION OF NOTICE.—In the formation of a local improvement district, the publication of the notice of the time when the council would hear the petition and determine whether it is signed by a majority of the property owners, *held,* to have been made in accordance with the provisions of the act of 1913, page 527.

2. LOCAL IMPROVEMENT—PETITION—WITHDRAWAL OF NAMES.—Signers of a petition for the formation of a local improvement can not withdraw their names because they later conclude that the formation of the district would be burdensome or inexpedient.

3. LOCAL IMPROVEMENT—FORMATION.—Act 1913, page 527, referring to improvement districts in cities and towns, provides that the finding of the council upon the second petition shall be conclusive, unless within thirty days thereafter, suit is brought to review its action in the chancery court of the county where such city or town lies.

Appeal from Howard Chancery Court; *James D. Shaver,* Chancellor; affirmed.

*The appellant, pro se.*

1. The notice is jurisdictional and must be given as required by law. Here it did nôt so comply. 83 Ark. 344; 115 *Id.* 163; 113 *Id.* 566; 104 *Id.* 298; Kirby & Castle's Digest, § 6826. To complete the two weeks another publication was necessary. 42 Ark. 93; 219 Fed. 103.

2. The petitions did not contain a majority in value of the real estate in the districts. Petitioners had the right to withdraw their names before the council acted. 213 Ill. 302; 216 *Id.* 205; 198 *Id.* 205; 28 Cyc. 163; 37 *Id.* 76; Elliott on Roads & Streets (2 Ed.), 332.

*W. P. Feazel,* for appellee.

1. The publication of the notice was sufficient. Kirby & Castle's Digest, § § 5751, 6826; 194 U. S. 248.

2. Petitioners had no right to withdraw their names after signing the petition. 70 Ark. 178; 77 *Id.* 122; 75 *Id.* 155; 81 *Id.* 208; 130 Ark. 97.

3. The action of the council is final and conclusive unless within thirty days suit is brought. 94 Ark. 503; 86 *Id.* 1; 84 *Id.* 259; 69 *Id.* 70; *Jacobs* v. *Paris,* 131 Ark. 28; 106 Ark. 156; 98 *Id.* 113; 110 *Id.* 514; 84 *Id.* 390.

HART, J. This case involves the validity of two separate improvement districts in the city of Nashville, Arkansas, upon two separate petitions, each signed by more than ten owners of real estate within the proposed district. The city council laid off two separate improve-

ment districts in the city of Nashville, Arkansas. Each contained the same territory. One was for the construction of waterworks and the other for sewers. After the first ordinance was duly passed and published, a second petition for each district, purporting to have been signed by the majority in value of the real estate owners within the proposed district, was filed with the city council. On the 18th day of September, 1916, the city council, by an order entered of record, fixed the 9th day of October, 1916, as the time it would hear the second petition and ascertain if each of them contained a majority in value of the owners of real estate within the proposed districts. The city clerk was ordered to give notice of the time and place of hearing, by publication, as required by the statute. The notice was published in a weekly newspaper published in the city of Nashville. The first insertion was in the paper published on September 23, 1916, and the second, on September 30, 1916. The same notice was given for each district. On the 9th day of October, 1916, the city council, by an order, duly entered of record, postponed the hearing of said petitions until the 19th day of November, 1916. On the 13th day of October, 1916, there was filed with the recorder of the city of Nashville, addressed to the mayor and board of aldermen, a petition as follows:

"The undersigned, your petitioners, having heretofore petitioned in favor of the improvement districts in the city of Nashville, Arkansas, which undertaking is now before your body, would most respectfully represent and show that since signing the same we have made further investigation of the effect of the organization of the districts contemplated, the taxes and burdens incident thereto, and having come to the conclusion after mature deliberation and thought, that the contemplated improvement district is not wise at this time, we do most respectfully ask and request that our names be withdrawn from said petitions or request for the improvement district."

This petition was signed by certain property owners within the proposed district. On the 19th day of November, 1916, the city council proceeded to hear the petitions asking for the establishment of the improvement districts. They found that a majority in value of the owners of real estate had signed each petition as required by the statute. No notice was taken of the petition copied above in which certain property owners asked that their names be erased from the petition. These owners had property of the assessed value of over $28,000, and it is conceded that if their names should be erased from the petitions there would not be left on said petitions a majority in value of the real estate owners of the proposed districts.

The present action was instituted by a property owner in the proposed district in the chancery court for the purpose of reviewing the action of the city council in establishing the improvement districts and the record shows that it was not brought until more than thirty days after the city council had established the districts and appointed the commissioners therefor.

The cases were consolidated for the purposes of trial.

The chancery court upheld the validity of the districts and the case is here on appeal.

Section 1 of an act to amend the statute in reference to improvement districts in cities and towns passed by the Legislature of 1913, provides that where persons claiming to be a majority in value of the owners of real property within a proposed improvement district in a city or town shall present to the council a petition praying that such improvement be made, that the petition shall also designate the nature of the improvement to be undertaken upon the real property situated within the district. The section also provides that the city clerk or town recorder, by order of the council, shall give notice by publication once a week for two weeks in some newspaper published in the county in which such city or town may lie, advising the property owners within the district

that on a therein named date the council will hear the petition and determine whether or not those signing the same constitute a majority in value of such owners of real property. See Acts of 1913, page 527.

It is true that the giving of this notice is jurisdictional as contended by counsel for appellants. *Voss* v. *Reyburn,* 104 Ark. 298. The record shows that the notice just referred to was in proper form and that it was published by a newspaper with a *bona fide* circulation which was published in the city of Nashville. The first insertion was on September 23, 1916, and the next and last was in the paper issued September 30, 1916.

(1) It is the contention of counsel for appellants that this is not a compliance with the act just referred to providing for the publication of such notices. Section 4925 of Kirby's Digest provides that when any legal advertisement or notice is required by law to be published and a definite time is specified, it shall be construed to mean once a week during the time so specified. The general rule of construction is that acts relating to the same subject must be read in the light of each other. It is true the section of the Digest just referred to was passed before the act of 1913, but the section of the Digest is general in its nature and operates upon the publication of notices under subsequent acts which come within its terms. When the two acts are read and considered together, it is evident that the notices were published in compliance with the statute. The publication of the date of the 23d day of September, 1916, covered the week following it, and the publication of September 30, 1916, covered the week following it. The hearing by the council was set for October 9, 1916. This was more than seven days after the date of the last publication. Therefore we hold that the notice was given by publication once a week for two weeks as required by the statute.

(2) It is next contended that the second petition did not contain a majority in value of the owners of real estate situated within the proposed districts. In making this

contention counsel for appellant insist that the property owners had a right to come in and have their names erased from the second petition at any time before it was presented to the city council for action.   In making this contention they rely upon *Littell* v. *Board of Supervisors,* 198 Ill. 205.

It is true that under that case and others of a similar nature, it has been held that unless otherwise provided by statute, the signers of a petition like the one in question are free to withdraw their names up until the town or city council has acted upon the same.   This court, however, has taken the contrary view on this question. In *Echols* v. *Trice,* 130 Ark. 97, 196 S. W. 801, this court held that petitioners for a road improvement district could not withdraw their names because they had reached the conclusion that the construction of the proposed improvement would be inexpedient, burdensome, or disproportionate in benefits to the costs.   The reason given was that all these matters might have been thoroughly considered by the property owners before signing the petition.   In that case the statute provided that any person might withdraw his name from the original petition for the organization of the district upon presenting valid reasons therefor in writing.   The court held that an excuse that existed at the time of signing the petition would not be a sound reason for allowing a withdrawal of the signature of the petitioner.   The reasons which the statute contemplated were decided to be such as fraud, deceit, misrepresentations, duress, etc.   The reason set forth by the petitioners in the present case for the withdrawal of their names was that after further investigation of the organization of the district and after more mature deliberation, they had reached the conclusion that it would be more burdensome than they had at first thought. These things were matters that they should have taken into consideration before they signed their names to the petition and under the reason of the case last cited, the grounds relied upon by them afforded no reason

why the council should allow them to withdraw their names. With their names allowed to stand on the petition it is conceded that a majority in value of owners of real estate within the proposed districts signed each petition.

(3) There is still another reason, however, why the decree of the chancery court must be allowed to stand. Section 1 of the act amending our statutes in reference to improvement districts in cities and towns provides that the finding of the council upon the second petition shall be conclusive unless within thirty days thereafter suit is brought to review its action in the chancery court of the county where such city or town lies. See Acts of 1913, page 527. This act has been held to be valid. *Waters* v. *Whitcomb,* 110 Ark. 511, and *Jacobs* v. *City of Paris,* 131 Ark. 28.

It follows that the decree must be affirmed.