[Nos. 2081, 2082, Jan. 28, 1919.]
PALMER et al v. TOWN OF FARMINGTON et al.

BOARD OF IMPROVEMENT DIST. NO. 1
OF TOWN OF FARMINGTON v.
PALMER.

SYLLABUS BY THE COURT.

1. Where actions are consolidated in the district court, and the order of consolidation provides that such actions are consolidated for the purpose of trial only, but thereafter the trial court and the parties treat the proceedings as a single

case, and pleadings are filed as though but one case is pending, and the court enters a single judgment, from which but one appeal is prosecuted, it is not necessary to docket two appeals in this court.        P. 149

2.  A party may not, by imposing upon an adversary over the latter's protest, the consolidation of his suit providing for a limited appeal with that of his adversary's theretofore filed, providing a longer period of appeal, in which a single judgment is rendered, deprive said adversary of the full period of time for appeal applicable to the suit filed by such adversary.        P. 149

3.  Laws 1909, c. 31, an act relating to improvement districts in cities and incorporated towns, is constitutional.
        P. 151

4.  Where one state or territory adopts a statute in force at that time in another state or territory, it also adopts the construction by the courts of such state or territory, unless for some good reason the courts of the state or territory adopting the statute should see proper to refuse to follow such decisions, as sound interpretations of the statute.  P. 151

5.  Laws 1909, c. 31, relative to local improvements in cities and towns, was taken from the statutes of the state of Arkansas.  Section 2 of the act provides: "When any ten resident owners of real property in any such city or incorporated town, or any portion thereof, shall petition the city or town council to take steps toward the making of any such local improvement," etc.; it thereupon being the duty of the city or town council to proceed as required in the construction of the improvement.  This section of the statute was construed by the Supreme Court of Arkansas in the case of Board of Improvement, District No. 60, v. Cotter, 71 Ark. 556, 76 S. W. 552, as requiring the signers of the petition to be not only owners of real property within the district to be improved, but actual residents therein.        P. 151

6.  The word "resident" is used in the statute as an adjective, describing and defining the kind or class of owners, and if the petitioner must be an owner of real estate within the improvement district, where it embraces less than the limits of the municipality, he must likewise be the kind or class of owner described in the statute, namely, a resident owner.        P. 151

7.  Under the Code, parties to an action are required to state facts constituting their cause of action or ground of defense in their pleadings.  An estoppel, to be available on the trial, must be specially pleaded, where there has been an opportunity for so pleading it.        P. 159

Appeal from District Court, San Juan County; Abbott; Judge.

Suit for injunction by J. M. Palmer and others against the Town of Farmington and others, to have certain improvement assessments declared void and to enjoin their collection; and suit by the Board of Improvements District No. 1 of the Town of Farmington against J. M. Palmer and others, to collect such assessments. Cases consolidated for purpose of trial, and judgment for the town of Farmington and others, and the Board of Improvement District No. 1 of Town of Farmington and Palmer and others appeal. ' Reversed and remanded, with directions to enter judgment for appellants.

A. B. RENEHAN, of Santa Fe, (CARL H. GILBERT, of Santa Fe, of counsel), for appellants.

FRANK A. BURDICK, of Farmington, and A. M. EDWARDS, of Santa Fe, for appellees.

### OPINION OF THE COURT.

ROBERTS, J. The town of Farmington, San Juan county, was incorporated prior to 1909. Appellant claims that Farmington was not an incorporated town but an incorporated village; that under the provisions of section 2452, C. L. 1897, it could not be an incorporated town, because having less than 1,500 inhabitants. Appellee, on the other hand, contends that by virtue of a subsequent statute it is an incorporated town, but this question is of no moment.

In August, 1909, a petition purporting to be signed by 10 resident owners of real estate in the town of Farmington was filed in the office of the town clerk, asking that a certain portion of the town be established as an improvement district under the provisions of chapter 31, Laws 1909, for the purpose of constructing standard cement sidewalks and crossings. Of those who signed the petition, only 2 were in fact resident real estate owners within the district sought to be formed. The remainder of the petitioners were owners of real estate within the improvement district, and, while residing within the

town of Farmington, did not reside within the limits of the district. Purporting to act on the authority of this petition, the town council thereafter enacted an ordinance declaring the portion of the town referred to in the petition to be established as "improvement district No. 1 of the town of Farmington." Appellant Palmer and others appeared before the meeting of the board at which this ordinance was enacted, and protested against the construction of any sidewalks in the district, on the ground that the same was not legally created, and also on economical grounds, but their protest was ignored. Petition was thereafter filed, purporting to be signed by owners of real estate in the improvement district representing a majority in the assessed value therein, asking that the improvement be made. Town council proceeded on the strength of this petition to appoint a board of improvement and assessment for said district. The cost of the improvement was apportioned between the various lots. Bonds were issued and sold, and the improvement was completed. The original assessment was insufficient, and a new board of assessment was afterwards appointed, which reassessed the property, by adding a certain percentage to each original assessment.

Two suits were thereafter instituted—one by the board of improvement, to collect the assessments from appellants, and one by the appellants, to have the assessments declared to be void, and the appellees enjoined from collecting the same. The injunction suit was the first filed, and later the improvement district filed the subsequent suit to collect the assessments. These cases were, over objection of appellants, consolidated in the lower court; the decree of consolidation stating that they were consolidated for the purpose of trial. But after the order of consolidation the two cases were treated by the court and the parties as but one case, and but one judgment was rendered by the court.

The theory of appellants' complaint in the injunction suit was that chapter 31, Laws of 1909, did not apply to the town of Farmington, in that it had less than 1,500 population; second, that the town council of Farmington

had no jurisdiction to proceed with the formation of the improvement district, because the initial petition had not been signed by 10 resident property owners within the district; third, that the second petition had not been signed by a majority in value of the property owners within the district; and, fourth, that the improvement district law of 1909 was unconstitutional. The same facts were set up as a defense in the consolidated suit. The trial court found that the initial petition had been signed by 10 property owners within the improvement district, and that such property owners were residents of the town of Farmington, and held that under the statute the petitioners were not required to be actual residents within the improvement district, but were required only to be property owners therein and residents of the town. On all the other points the court found against the appellants, and a judgment was entered dissolving the temporary injunction theretofore issued, and giving the board of improvement of the district judgment against the appellants for the amounts due under the assessments made. From the judgment an appeal was prayed and a supersedeas bond given.

[1, 2] In this court appellants attempted to docket the appeal case as one case, but were informed by the clerk of the court that it would be necessary, under the holding by this court in the case of Clark v. Insurance Co., 22 N. M. 368, 163 Pac. 371, to docket two appeals. Appellees have filed a motion to dismiss the appeal in cause No. 2081, which was the injunction suit filed by Palmer against the town of Farmington and the improvement district; but from the brief filed by them in support of the motion we take it that the purpose of the motion was to procure the dismissal of the appeal of the consolidated cause. The theory of the appellees in seeking the dismissal of the appeal was that the appeal had not been prosecuted within 20 days after the rendition of the said decree. The improvement district law (chapter 31, Laws 1909) provides for the institution of suit by the board of improvement to collect any unpaid assess-

ment, and in any such suit by section 61 it is provided that—

On appeal said "transcript shall be filed in the office of the clerk of the Supreme Court, within twenty days after the rendering of the decree appealed from."

And by section 64 it is provided:

"No appeal shall be prosecuted from any decree after the expiration of the twenty days herein granted for filing the transcript in the clerk's office of the Supreme Court."

Appellees conceded that in the injunction suit appellants would have the regular time for taking the appeal and filing the transcript, but that as to the suit by the board of improvement the time would be limited to 20 days.

As heretofore stated, the consolidation of the two cases in the court below was made upon motion of the appellees and over the objection of appellants. Section 4212, Code 1915, provides for the consolidation of actions. In the case of Clark v. Insurance Co., supra, this court held that where separate cases are consolidated for trial purposes only by order of the court, and separate judgments are rendered in each case, such several judgments cannot be reviewed in a single appeal or writ of error. In that case Clark instituted suit against several insurance companies to recover upon several policies for a loss by fire. The cases were consolidated for purposes of trial only. The jury rendered separate verdicts in each case, and separate judgments were rendered, and it was properly held that separate appeals must be prosecuted. In this case, however, after the order of consolidation was made, the trial court and the parties treated the proceeding in the trial court as a single case. Pleadings were filed as though but one case was pending and the court entered a single judgment, from which but one appeal was prosecuted and one supersedeas bond executed. In view of the attitude of court and counsel in the court below, we think it is but fair to treat the case in this court as presenting but a single appeal. It has frequently been held by this

court that parties here will be bound by the theory of the case in the lower court. Cadwell v. Higginbotham, 20 N. M. 482, 151 Pac. 315. While in that case the appellee attempted to shift the theory of his complaint, the same principle would apply to this case, where the pleadings and judgment show that the parties treated the cases as consolidated for all purposes. This being true, the question arises as to whether or not the appellee, by securing the consolidation of a case governed by the short appeal statute with another case in which the longer right of appeal exists, are entitled to hold the appellants to the short appeal statute. In the case of O'Connor v. Force, 58 Wash. 215, 108 Pac. 454, the court said:

"The actions were consolidated for trial, and the respondent contented himself with one judgment entered in the consolidated action, and we think the appellants were well within the statute when they appealed therefrom as a single judgment affecting them jointly."

That the limitation in the improvement district law as to the time for taking an appeal and filing a transcript applies only to suits instituted by the board, and has no application to an injunction suit instituted by a property owner to restrain the collection of a tax, would seem to be clear, and the Supreme Court of Washington, in the case of Gould v. Knox, 53 Wash. 248, 101 Pac. 886, under a similar statute limiting the right of appeal in tax proceedings, placed a similar construction upon a short appeal statute. A party may not, by imposing upon an adversary, over the latter's protest, the consolidation of his suit providing for a limited appeal with that of his adversary's, theretofore filed, providing a longer period of appeal, in which a single judgment is rendered, deprive said adversary of the full period of time for appeal applicable to the suit filed by such adversary. To hold otherwise would be manifestly unfair to the appellant. For this reason we think the motion to dismiss the appeal is not well taken.

[3-6] Thus we are brought to a consideration of the merits of the case. The first point which appellants make clear is that chapter 31, Laws 1909, is unconsti-

tutional. The act in question was copied almost literally from the statutes of the state of Arkansas; the parent statute being enacted in that state by act of March 22, 1881 (Acts of 1881, p. 161). In the case of City of Little Rock v. Board of Improvement, etc., 42 Ark. 152, the constitutionality of the act was passed upon, and it was there held to be constitutional. The question is there fully discussed, and as we agree with the conclusion of that court, and the argument advanced in support thereof, nothing further need be stated by us upon this point.

The next question raised is as to whether the act in question has any application to the town of Farmington; said town having less than 1,500 inhabitants. Appellants contend that Farmington is in reality not a town, but a village, and that the act has no application to a village. This question, however, need not be decided, for, as stated, the act was repealed by the Legislature in 1913, and a substituted act took its place, which specifically applies to villages as well as towns.

It is next contended that the jurisdictional requirements of the act were not complied with, in that the act requires that the initial petition for the improvement district must be signed by 10 resident owners of real property within the district, and the petition in question was signed by only 2 petitioners residing within the limits of the district; the remainder of the petitioners residing within the limits of the town and owning property within the district. The statute relative to the initial petition reads as follows:

"When any ten resident owners of real property in any such city or incorporated town, or of any portion thereof, shall petition the city or town council to take steps toward the making of such local improvement, it shall be the duty of the council to at once lay off the whole city or town, if the whole of the desired improvement be general or local in its nature to said town or city, or the portion thereof mentioned in the petition, if it be limited to a part of said city or town only, into one or more improvement districts, designating the boundaries of such district so that it may be easily

distinguished; and each district, if more than one, shall be
designated by number and by the object of the proposed
improvement." Laws 1909, c. 31, § 2.

This statute was taken, as stated, from the state of
Arkansas, and this identical section appears as section
5322, Sandel & Hill's Dig. 1894. The rule is that
where a statute is adopted from another state, and such
statute has previously been construed by the courts of
such state, the statute is deemed, as a general rule, to
have been adopted with the construction so given to it
by the courts of the state from which it was taken. Lewis'
Sutherland's Stat. Const. § 404. In the case of Dow v.
Simpson, 17 N. M. 357, 132 Pac. 568, this court said:

"As our statute, however, was taken from the state of
Washington verbatum, it is our duty to give to it the judicial
construction placed upon it by the Washington court, as the
presumption is that our Legislature, in adopting it, also in-
tended to adopt the judicial construction placed upon it by
the courts of that state."

In the case of Armijo v. Armijo, 4 N. M. (Gild.) 57,
13 Pac. 92, the court said:

"It is a familiar rule of law, that where one state or terri-
tory adopts a statute in force at that time in such state or
territory, it also adopts the construction by the courts of
such state or territory, unless for some good reason the courts
of the state or territory adopting the statute should see proper
to refuse to follow such decisions as sound interpretations of
the statute."

See also Lutz v. A. T. & S. F. Ry. Co., 6 N. M. 496,
30 Pac. 912, 16 L. R. A. 819.

In the case of Board of Improvement District No. 60
v. Cotter, 71 Ark. 556, 76 S. W. 552, a similar question
came before the Supreme Court of Arkansas, and the
court, after referring to a provision of the Constitution
of that state of 1874, which granted the Legislature the
power to enact statutes empowering cities and towns
through their municipal governments, to levy assess-
ments for the purpose of local improvements, and quot-
ing the section of the Arkansas statute identical with
section 2 of our statute, said:

"We make mention of these matters to show that the Legislature, in the enactment of the section above quoted, was seeking to carry out to its full measure the principle of local self-government, and, in the use of the words embodied in the phrase under consideration, meant to, and did, prescribe, first, that in order to the establishment of an improvement district, where the nature of the improvement affected the whole of a city or incorporated town, such should be petitioned for by at least ten residents of such city or town; second, that should only a portion of the territory of the municipality be affected, and only a portion thereof be desired as a district, then ten resident owners of real estate in such portion of the territory shall sign a petition likewise. The statute not only contemplates the establishment of a district out of any portion of the territory of a municipality, as well as out of the whole thereof; but it is also true that after the same is established it is a separate and independent district, so far as the municipality or any other district is concerned, possessed of the same inherent powers and clothed with the same authority that all other districts are. This being true, it would seem clear that the Legislature prescribed that, in order to the establishment of a district covering only a portion of such territory, precisely the same proceedings should be required as of a district where the whole territory of a municipality might be affected thereby; that is to say, if the whole of a city or town is included in a district, ten resident property owners of the whole city or town must sign the petition, and if only a portion is included ten persons of the same class must sign. This construction of the language of the section certainly comports with the idea of local self-government, and preserves to the resident owners of real property within the affected locality the right in the first instance to say what their will and choice is on the question of the establishment of the district."

This case has been cited with approval in later cases in the same state and has never been departed from. Bell v. Phillips, 116 Ark. 167, 172 S. W. 864; Riddle v. Ballew, 197 S. W. 27, 130 Ark. 161. The Supreme Court of Arkansas having thus held that the statute required the signers of the petition to be, not only the owners of real property within the district to be improved, but actual residents therein, presumptively, when the Legislature of this state adopted the statute, it intended that it should receive a similar construction, and no controlling reason has been advanced by appellees in support of a different interpretation.

Another significant fact is that the Legislature of Arkansas, by act of March 27, 1905 (Laws 1905, p. 300),

amended the statute under consideration in the Cotter Case by striking out the word "resident," so that the statute read, "When any ten owners of real property in any such city or incorporated town, or any portion thereof, shall petition," etc. Our Legislature, in adopting the statute, elected to take the original statute, rather than the amended one.

But, aside from the fact that the adopted statute has been construed by the Supreme Court of Arkansas, prior to its adoption, this court, in construing the statute, would necessarily be forced to come to the same conclusion. If we omitted the word "resident" before the word "owner," as is the case in the amended Arkansas statute (section 6824, Kirby & Castle's Digest 1916), no one could successfully contend that a person owning property in an incorporated city or town would be eligible to sign a petition for the formation of a local improvement district in a district which did not embrace the whole of the city or town and in which district the petitioner owned no real estate.

Appellee here contends that the statute is satisfied if the petitioner is the owner of real estate within the proposed improvement district, if he is a resident owner of real estate within the limits of the city or town, although he does not reside within the improvement district. It concedes that he must be the owner of real estate within the limits of the proposed improvement district. The concession that the petitioner must be the owner of real property within the proposed improvement district conclusively demonstrates the unsoundness of the argument that he is not required to be a resident therein. The word "resident" is used in the statute as an adjective describing and defining the kind or class of owners, and if the petitioner must be an owner of real estate within the improvement district, where it embraces less than the limits of the municipality, or the whole of the municipality, it necessarily follows that he must likewise be the kind or class of owner described in the statute, namely, a resident owner.

If the act under consideration invested the city or town council with the power to determine whether or not the petition had been signed by the requisite number of qualified petitioners, and upon such finding to establish the improvement district, such finding would possibly be conclusive against a collateral attack, but the act contains no such provision. The district is formed by the filing of the petition, signed by 10 resident owners of real estate, and whether the district is established or not depends upon the question as to whether the petition was in fact signed by such number of qualified petitioners. If not so signed, no district is established; but, if in fact it is signed as required, jurisdiction exists in the city or town council to proceed with the subsequent steps authorized by the statute.

The next question logically arising is as to whether or not the failure of appellants to institute legal proceedings within 30 days after the passage of the ordinance fixing the assessment bars them from relief. The provisions of our act now in question are as follows:

"Within thirty days after the passage of the ordinance mentioned above, the recorder or city clerk shall publish a copy of it, as and in the manner provided in section 3 thereof. And all persons who shall fail to begin legal proceedings within thirty days after such publication for the purpose of correcting or invalidating such assessment, shall be forever barred and precluded." Section 29, c. 31, Laws 1909.

This section must be construed jointly with section 76 of that act, which provides:

"No injunction shall issue to restrain the prosecution of any work contemplated by this act, but any person injured shall seek his relief by proceedings at law within the time hereinbefore provided, or he shall be deemed to have waived the same, except that an injunction may issue where an illegal assessment shall be sought to be enforced under color of this act."

It will be seen, therefore, that while the act provided in one section that legal proceedings to correct erroneous assessments must be commenced within 30 days after the levying of such assessments, still that injunction

may issue at any time in which an illegal assessment is attempted to be collected. The only way in which these two provisions may be construed harmoniously is to hold that the first one applies only to the correction of errors or irregularities arising after the formation of the improvement district; in other words, after jurisdiction has attached.

It must be apparent that, if no improvement district were ever established, there was no foundation for the assessment of property, the adoption of such assessment by ordinance, or for the notification of interested parties that they must take legal action within 30 days after such adoption. If there were no such foundation for the notice, then the notice itself was void, and it must necessarily follow that it could not be considered as starting a limitation running after which the property owner would be barred from relief against the assessment.

A somewhat similar situation exists relative to judgments of the district court. Unless an appeal is taken from such a judgment within a specified time, the party against whom the judgment was rendered would be barred from relief therefrom, and the same could not thereafter be questioned if the court rendering the judgment had jurisdiction of the parties and of the subject-matter, in the absence of fraud or other equitable grounds. If, however, a district court should attempt to pronounce judgment against one over whom it had no jurisdiction, or in a case in which it had no jurisdiction of the subject-matter, we do not apprehend that the defendant would be precluded from enjoining a collection of such void judgment at any time. In the case at bar the same reasoning applies.

In line with this reasoning, the Supreme Court of Arkansas had, prior to the adoption of the statute, determined that a similar provision of the Arkansas statute had no application to causes in which the improvement district had not been legally created. These

cases were decided under the original Arkansas statute, which, though it differed slightly from the form in which it stood at the time it was adopted by our Legislature, still was of the same effect as that later adopted, and was, if anything, more comprehensive than the subsequent enactment. The Arkansas statute, so construed, read as follows:

"The clerk shall publish a copy of it [the ordinance fixing assessment] in some newspaper published in the city, one time; and any one who may feel aggrieved thereby may object to the assessment; and such person shall commence legal proceedings for the purpose of trying the validity of said assessment within twenty days after the date of said publication, or else he shall be forever barred in all courts of law or equity from questioning the validity of the assessment and the lien created thereby."

In the case of Crane v. Siloam Spring, 67 Ark. 30, 35 S. W. 955, the Supreme Court said:

"The question is not free from doubt, but, after considering the same, we are of the opinion that the section quoted has reference to errors or irregularities on the proceeding upon the second petition relating to the assessment, and that the 20-day limitation bars only such omissions and irregu-- larities as occurred subsequent to the passage of the ordinance establishing the district and the publication thereof. If no improvement district has been established, then the petition for the assessment and the ordinance therefor have no foundation to rest upon, and are without authority and void, for the council has no power to make the assessment until after the district has been established and publication made in accordance with the statute. The property owners may set up and show this want of authority before or after the expiration of the 20 days from the publication of the assessment ordinance."

In the case of Board of Improvement v. Cotter, supra, the Supreme Court said:

"The provisions of section 5336, prescribing 20 days' limitation upon property owners, do not apply to any matter involving the validity of the establishment of the improvement district."

In the case of Ahern v. Improvement District, 69 Ark. 68, 61 S. W. 575, the court again limited the application of the section in question to irregularities in the levying of the assessment, saying:

"As to mere irregularities, not going to the foundation principles upon which the district was organized, the objections were not made within the 20 days, and the defendants are therefore barred by the statute."

It will be noted that in the case of Crane v. Siloam Springs, supra, the Arkansas court held that, where no valid improvement district had been established, the assessment was not merely irregular, but was void, thus bringing an action for relief against such assessment precisely within the provisions of section 76 of our act providing for injunctions against the collection of illegal assessments. Clearly, if no improvement was ever formed, the assessment upon appellant's property would be "an illegal assessment," and the statute clearly gives him the right to injunction to prevent the enforcement of such an assessment "under color of this act."

[7] Lastly, appellees argue that appellants are estopped to question the validity of the assessments by standing by and permitting the improvements to be made, and because, when Palmer appeared before the town board and objected to the making of the improvements, he did not call to the attention of the board the fact that it had no jurisdiction to act, because the petition was not signed by the required number of qualified petitioners. The question of estoppel, however, is not here for consideration because appellees did not plead estoppel in the lower court. Nor are there any findings upon the question. In the Code states, where parties to an action are required to state the facts constituting their cause of action or ground of defense in their pleadings, it is uniformly held that estoppel, to be available on the trial, must be specially pleaded, where there has been an opportunity for so pleading. See note to the case of Tyler v. Hall, 27 Am. St. Rep. 337. In 10 R. C. L. p. 842, the same rule is announced, and many authorities cited in support of the same. In 2 Page and Jones, Taxation by Assessment, § 1038, the author says:

"A public corporation, which wishes to take advantage of an estoppel, must plead the facts which give rise to such

Independent Etc. Co. v. N. M. C. R. Co., 25 N. M. 160.

estoppel. It cannot take advantage of an estoppel under averments which show that the proceedings were conducted regularly."

Here the board of improvement had full opportunity to plead the estoppel, but failed to do so, and in the trial court elected to rely upon the regularity of the proceedings.

For the reasons stated, the cause will be reversed and remanded, with directions to the trial court to enter judgment for appellants; and it is so ordered.

PARKER, C. J., and RAYNOLDS, J., concur.