JAMES S. SIMMONS v. CATHERINE D. FESSENDEN, *a widow.*

149 So. 21.

Division B.

Opinion Filed June 15, 1933.

*R. J. Duff* and *L. D. McGregor,* for Appellants;
*Taliaferro, Morris & Carter,* for Appellee.

BUFORD, J.—Appellant filed suit to foreclose a certain purported paving lien evidenced by a certificate issued on the authority of the City Council of .the City of Tampa.

It is alleged that the certificate sought to be foreclosed was issued under Section 28 of Chapter 5363, Laws of Florida, approved June 8, 1903, as amended by Chapter 6405, Laws of Florida, 1911, approved June 3, 1911, relating to the City Charter of the City of Tampa as amended by Chapter 7718, Acts of 1917, approved June 7, 1917. The Act as amended by the last mentioned chapter reads as follows:

"Sec. 28. Whenever any street, alley or highway shall have been heretofore or may hereafter be paved, graded, curbed, laid out, opened, repaired or otherwise improved by the City of Tampa, except sidewalks including work and improvements now in process of construction or whenever said street, alley or highway shall have been or may hereafter be ordered paved, graded, laid out, opened, repaired or otherwise improved, except sidewalks, or whenever any sewer or drain shall have been heretofore or may hereafter be constructed or repaired in the City of Tampa, the City Council shall as soon as the cost of such improvement shall have been certified to them by the Commissioners of Public Works as hereinbefore provided, 'assessed against the abutting property, two-thirds of the cost of said improvements in proportion to the frontage of said abutting property on said street, alley or highway so improved; Provided that whenever a sewer is laid no greater amount of the cost thereof shall be assessed against the abutting property than two-thirds of the cost of laying an eight-inch sewer; Provided, further, that the entire cost of the improvements at the intersection of streets shall be paid by the City. Provided further, that whenever the owner or owners of two-thirds of the property abutting on any street, alley or high-

way shall present to the City Council a petition duly signed by them asking that said street, alley or highway be graded, paved and curbed or graded, or paved, or curbed, it shall be the duty of the City Council to grant said petition and order the said street, alley, or highway, or portion thereof, to be paved, graded or curbed, or graded or paved, or curbed. The determination of the City Council as to the sufficiency of the petition shall be final and conclusive. After the improvement is completed, the entire cost thereof shall be assessed against the property abutting upon said street, alley or highway, or portion thereof, in proportion to the frontage on said street, alley or highway, except as much thereof as may be lawfully assessed against any street railway or other railroad company under the ordinance of the city, or the Charter of the City of Tampa; Provided, however, that this shall not affect or impair any powers now possessed by the City of Tampa in cases not within the terms of these provisos. Approved June 7, 1917."

The defendant answered the bill of complaint and paragraphs 3 and 9 of her answer are here under consideration. Paragraph 3 of the answer is as follows:

"This defendant admits the allegations of paragraph three of the bill of complaint, except that this defendant avers that said City of Tampa, by and through its City Commissioners had no power, whatsoever, to assess against the abutting property the total cost of any such improvement so made except when such improvement should be made pursuant to a petition for such improvement signed in person by the owners of at least two-thirds of the property abutting upon the street or portion thereof so petitioned to be improved."

Paragraph 9 is as follows:

"This defendant further avers that said Chapter 7718 (Section 28 of said chapter) authorizing the City of Tampa

to assess the entire cost of paving, grading, and curbing public streets, against the property abutting thereon, only in the event proceedings for the parving, grading and curbing of said streets were instituted by a petition of the owners of at least two-thirds of such abutting property, and further that Ordinance Number 809 of said City of Tampa, approved January 24, 1918, provided in part as follows:

" 'Section 1. No petition to the City Council for paving, grading or curbing, or for grading, paving or curbing any street, alleys or highways, or any designated portion thereof, shall be granted unless subscribed by the owners of at least two-thirds of the property abutting upon said street, alley or highway, or the portion thereof desired to be improved, and such subscribers shall acknowledge their signatures thereto before some officer authorized by the laws of the State of Florida, to take acknowledgments of deeds.

" 'Section 2: The petition shall be subscribed by each owner in person or by his attorney in fact, but when signed by an attorney in fact the authority of such attorney so signing said petition shall be evidenced by a power of attorney, giving such authority and the execution of said power of attorney shall be acknowledged by the party executing same before some officer authorized by the laws of the State of Florida to take acknowledgments of deeds, and the power of attorney with the certificate of acknowledgment thereto shall be presented with the petition and shall remain on file with the Clerk of the City Council.'

"And this defendant avers that said petition and the certificate of the Florida Title Insurance Company of the ownership of the property abutting on the portion of Central Avenue to be improved, attached to and a part of said petition and constituting a part of the official records of the City of Tampa, shows upon its face that the persons whose names were signed thereto did not own as much

as two-thirds of the property abutting upon said portion of Central Avenue, and this defendant avers as a matter of fact that the persons who signed said petition did not own in the aggregate as much as two-thirds of said abutting property, and this defendant alleges that said City Commission was without authority or jurisdiction to pass any resolution ordering said improvements to be made pursuant to said petition and that the resolution which was passed, ordering such improvements to be made and directing the total costs thereof to be assessed against the abutting property was and is null and void and of no effect and that the certificate of indebtedness sought to be foreclosed herein was issued by the City of Tampa without any authority or warrant in law and is likewise null and void and constitutes no lien upon the real estate described in the bill of complaint, and the defendant avers that she had no knowledge of the facts alleged to render said certificate of indebtedness void at the time of making payment of the first installment thereof nor until after the institution of this suit."

Motion was made to strike these two paragraphs of the answer which motion was denied and complainant appealed.

We think there was no error in denying the motion to strike these portions of the answer.

The question here is whether or not the jurisdictional prerequisite had occurred which authorized the city authorities to proceed to levy the assessment. The city authorities were authorized under the law to levy assessments equal to the entire cost of the improvement only when the improvement had been made pursuant to a petition signed by two-thirds of the property owners, that is owners of two-thirds of the property abutting upon the street to be improved, and unless such petition had been presented to the council there was no authority vested in the council to assess the entire cost against the abutting property owners. Any steps taken by

the city council to make such an assessment without such petition having been filed were void and of no effect and, therefore, even the issuance of a notice that the assessment would be made was void and had no binding effect upon the property owners.

In 44 C. J., page 567, the author says:

"In the absence of charter or statute requiring it, a municipality can establish an assessment district without a petition therefor by the property owners within the district, even though a large number or all of the property owners are opposed to the creation of the district. On the other hand, where a charter or statute provides for a petition by property owners for the creation of an assessment district, it has generally been held that this requirement is jurisdictional and mandatory and that a valid assessment district cannot be created unless the required petition is filed";

The author also says that there is some authority to the effect that the petition is not a jurisdictional prerequisite and that to proceed without petition is at most the exercise in an irregular manner of a power amply conferred. The latter holding, however, is in a hopeless minority. In support of the former holding the following cases are cited:

"Selz v. McGeehee Pav. Dist. No. 1, (Ark.) 292 S. W. 133; Dunbar v. Dardenelle St. Imp. Dist. No. 1, 172 Ark. 656, 290 S. W. 372; Riddle v. Ballew, 130 Ark. 161, 197 S. W. 27; Bell v. Phillips, 116 Ark. 167, 172 S. W. 864; Harnwell v. White, 115 Ark. 88, 171 S. W. 108; Smith v. Texarkana Impr. Dist. No. 14, 108 Ark. 141, 156 S. W. 455, 44 L. R. A. NS 696; Kraft v. Smothers, 103 Ark. 269, 146 S. W. 505; Little Rock Bd. of Imp. Dist. No. 60 v. Cotter, 71 Ark. 556, 76 S. W. 552; McQueen v. Moscow, 28 Ida. 146, 152 P. 799; Hutchinson v. Omaha, 52 Nebr.

345, 72 N. W. 218; Palmer v. Farmington, 25 N. M. 145, 179 P. 227."

In the case of Mulligan v. Smith, 59 Cal. 206, the Supreme Court of California said:

"When, therefore, the Legislature prescribed that a petition from the owners of a majority in frontage of the property to be charged with the cost of the improvement was necessary to set the machinery of the statute in motion, no step could be taken under the provisions of the statute until the requisite petition was presented. It was the first authorized movement to be made in the opening of the avenue. When taken, officers who were to constitute and organize a Board of Public Works were authorized to organize. Until it was taken they had no such authority. They could not legally act at all; or if they acted their proceedings would be unauthorized and void. The presentation of the petition required by the statute was therefore essential. It was, as other courts in construing similar statutes, have expressed it, a jurisdictional fact, that may not be presumed or inferred, upon which rested all the subsequent proceedings authorized by the statute. (Matter of the City of Buffalo, 78 N. Y. 362; People *ex rel.*, Rogers v. Spencer, 55 *id.* 1; Litchfield v. Vernon, 41 *id.* 123; People v. Smith, 55 *id.* 135; Sharp v. Spier, 4 Hill 87; Graves v. Otis, 2 *id.* 466; Dampe v. Town of Dane, 29 Wis. 419). 'A common requirement,' says Mr. Cooley, in his work on Taxation, 464, 'is that the improvement shall be asked for or assented to by a majority or some other proportion of those who would be taxed. The want of a compliance with this requirement is fatal in any stage of the proceedings."

The opinion in this case was referred to with approval in the case of Zeigler v. Hopkins in the Supreme Court of the United States, 29 Law Ed. 1019, 117 U. S. 683.

We are not unmindful of the fact that Section 28 of Chapter 7718, *supra,* provides:

"The determination of the city council as to the sufficiency of the petition shall be final and conclusive." But to hold this provision valid, we must hold that it means that the determination of the City Council shall be final and conclusive as to the sufficiency of the petition as to matters *in pais* and not appearing to the contrary on the face of the record.

In this case paragraph 9 of the answer avers that the petition "shows upon its face that the persons whose names were signed thereto did not own as much as two-thirds of the property abutting upon the said portion of Central Avenue." Now, if the petition and the certificate, attached thereto and made a part of it, showed upon its face that the petition was not signed by the owners of two-thirds of the property abutting on that portion of the street to be improved, then a determination by the City Council contrary to the face of the record could have no force and effect. In other words, the statute requires as a jurisdictional prerequisite that the petition be signed by the owners of two-thirds of the property abutting on that portion of the street to be improved and, until a petition so signed is presented there is nothing for the city council to act upon. If a petition so signed is presented, then the city council may determine whether or not the petition is sufficient to warrant the council in proceeding to accomplish and have performed the work and improvement sought by the petition. But to say that the city council could by fiat determine that a petition was sufficient which showed upon its face that it fell short of containing the signatures of the requisite proportion of the land owners would be to attribute to them a power which the statute never contemplated they should have. It would be just as logical to say that if the requisite

proportion of the owners of the land abutting upon a certain portion of "B" Street petitioned for its improvement that the city council could hold that it was sufficient to warrant an improvement on "G" Street.

Under the statute there must be a petition signed by the owners of two-thirds of the property abutting on the portion of the street to be improved and it must in some way petition for the improvement to be made. When this is done then the sufficiency of the petition may be determined by the city council, but until such a petition is presented there is no petition within the contemplation of the statute, the sufficiency of which the city council may determine.

The opinions of this Court cited by the appellants in support of their contentions do not appear to be applicable to a case of this kind. Those cases involved irregularities in procedure, while this case involves the absence of a jurisdictional prerequisite.

There being no error in the order appealed from, it should be affirmed and it is so ordered.

Affirmed.

DAVIS, C. J., and WHITFIELD, ELLIS, TERRELL, and BROWN, J. J., concur.